Jock v. Sterling Jewelers. Thank you. Mr. Mautner. Good morning. May it please the court, Gerald Mattman on behalf of Sterling. This appeal raises a novel issue of arbitration law we believe has never been decided in this circuit. That precise issue is whether the arbitrator exceeded her authority in attempting to bind absent class members who had not appeared before or otherwise consented to her exercise of authority. Plaintiff's brief contends that this issue was decided previously in 2011 in this court's ruling with respect to the arbitrator's clause construction award. We respectfully disagree. This court's ruling in 2011, authored by Judge Hall, was very narrow with respect to the contract interpretation issue, the issue of whether or not resolved the arbitration agreement could be read to allow for class arbitration. This court ruled that the arbitrator did not exceed her authority when she found implied consent to that method of arbitration as to the 14 named claimants in Sterling. The court ruled that the arbitrator did not exceed her authority in determining that the agreement permitted the plaintiffs to proceed with their effort to certify a class. We submit that the issue before the court, however, today is very different. The majority panel in 2011 did not determine the separate and distinct issue before the court as to whether or simply signing the resolve agreements absent class members therefore consented to the arbitrator's authority in this particular specific arbitration. This panel in 2011 did not consider the issue of how the arbitrator somehow might have acquired jurisdiction over class members who had never opted in, never submitted an arbitration claim, or signified their consent to participation in the proceeding. It was not until the class certification award was rendered that the arbitrator reached the precise issue of the actual scope of the class. And the class's number is about 44,000 as determined by the arbitrator? Correct, Your Honor. And this is just a declaratory or injunctive relief class? Correct, Your Honor, with respect to the Title VII disparate impact claims in the case. And your concern is that if this arbitration proceeds to conclusion that the class members who have not affirmatively joined the class will not be bound by any determination by the arbitrator? That's correct, Your Honor. That's one of our concerns in terms of the I'll participate if claimants win, but I won't be bound by it if they lose. That is one of the concerns addressed by Justice Alito and his concurrence in the Oxford Health Care case. The actual class certification award is 118 pages long. The section at issue before this court is from pages 115 to 117 where the arbitrator, we believe, conflates the issue of the agreement in resolve that an employee would sign to agree to a specific procedure. She conflates that with consent to participate in this particular arbitration. An example would be a female retail sales employee in Des Moines, Iowa, who in 1998 would sign the resolve agreement. Ten years later, 14 claimants would file their claim for arbitration. According to this arbitrator, that signature in 1998 was a blank check to consent to participate in the 2008 arbitration filed ten years later. We believe that's inconsistent with the touchdowns of arbitration with respect to consent and stretches consent or the concept of consent to the breaking point. To address your issue, that problem of collateral attack or inherent unfairness with respect to that choice by the absent class member. If claimants win, I'm in. If claimants lose, I won't. Plaintiffs also say this argument from Sutter was waived. The arbitrator in the class certification award at page 116 discusses Sutter. And the argument is, well, Sterling waived that argument because it asked the arbitrator to undertake a contract analysis but actually the record before this court shows that Sterling was forced to do so. Recall that plaintiffs filed a lawsuit before Judge Rakoff in 2008 and in July of 2008, he sent the case to AAA. At pages A104 and A111 of the record are Sterling's motion that we filed before Judge Rakoff that asked him to resolve the arbitration issue that resolve only allowed individual bilateral arbitrations and not class arbitrations. At page A121 of the record is the counterclaim that Sterling filed against the 14 claimants. At paragraph 51 of that counterclaim, we asked the court to declare that the arbitration under resolve must be conducted on an individual basis and not a class or collective action. The arbitration agreements themselves do say questions of arbitrability shall be decided by the arbitrator. Likewise, procedural questions which grow out of the dispute are also matters for the arbitrator. So it puts a lot in the hands of the arbitrator. I'm just making sure I'm understanding the record correctly, but it's your position that whatever the agreement said before the district court, you consistently argued we do not want the arbitrator to decide the issue of whether class arbitration is proper under these agreements. That's correct, Your Honor. And there's also, I believe, a clause in resolve allowing a court, the district court judge, to determine this issue also. But Judge Rakoff on July 15 denied our motion, rejected our counterclaim, sent us to AAA where we then had to participate in the clause. Wasn't it the law of this case, though, that it's up to the arbitrator to interpret the agreement that, to put it bluntly, Sterling had each of its employees sign? I mean, there wasn't a bilateral negotiation employee to company for each signature that was on there. Sterling evolved this document. It wanted it arbitrated. And it said that the arbitrator would decide what this means. I agree, Your Honor, that it is law of the case with respect to your ruling in July of 2011 with respect to the issue of what sort of process resolve provided. But it didn't address the issue of the extent of the authority of the arbitrator. All right. And your argument is she exceeded her authority under the existing arbitration. Sorry, under the existing contract, which has arbitration provisions. That's right. I'd like to reserve two minutes for rebuttal. I'm sorry. Judge Karoff. The district judge was under no obligation to issue that decision, but could transfer it to an arbitrator. Isn't that right? In this particular instance, that's what Judge Rakoff did. We attempted to take an interlocutory appeal. He did not get up here, and he denied that request also. Thank you. You've reserved two minutes for rebuttal. Thank you. Good morning. May it please the court. Joseph Sellers representing the claimants. Let me start with the point at which Mr. Mamet ended. The arbitration agreement makes no provision that distinguishes between authorizing class claims and requiring that individual members of the class elect separately to opt in. Indeed. Just at the start, just address how you think this is going to work, though, because I am troubled by Justice Alito's musings, because I also am having difficulty seeing if the arbitrator were to declare in favor of Sterling in this case, for instance. How could that possibly bind any persons who have not elected to affirmatively join the arbitration? Well, the reason it can bind the women who are members of the class who have not specifically elected to participate is because they signed a resolve agreement. Every one of them agreed to the same language. The arbitrator interpreted, and this court upheld, that they intended to pursue claims, their Title VII claims, it expressly mentions Title VII in the agreement, potentially as a class. So we filed a class action complaint in arbitration, putting the AAA and Sterling on notice, by virtue of which we could invoke the supplementary rules on class arbitration, because that's what the supplementary rules apply. These women, by virtue of having signed this agreement, have agreed to allow their claims to be adjudicated in a common arbitration. So having never before challenged whether they signed under duress, whether they knew what they were signing, they were not part of this proceeding that's taking place now in arbitration. And arbitration is a creature of contract. Right. Well, that's true that we don't know whether they signed under duress. But let's be clear, they entered into the agreement as a condition of their employment. So their continued employment, if they remained employees, presumably they accepted and ratified the agreement. There's no, and let me be clear, the rules that they agreed to follow through the resolve program are rules that expressly provide for a Rule 23 type class certification. That is, Rule 4 of the AAA rules expressly provides for that. No, the agreement says nothing about class arbitration. Well, the agreement, of course, was- The agreement that they signed. That was the subject of the first appeal. The agreement spoke neither- It's the law of the case here. But I'm saying for these women who were not parties to this proceeding, and if they wanted to chant to not be bound by the results at the end, why would they be bound if they signed an agreement that says nothing about class arbitration? Why would they not be able to litigate that? Well, because they've all entered into an agreement that provided that their Title VII claims may be submitted to class arbitration. There is nothing in Rule 4 of the AAA rules or in Rule 23, which normally applies to Title VII claims, that permits people to, it requires people to specifically elect to participate. Let me draw a distinction for you, if I may, between the way this has been handled in this agreement as opposed to the Equal Pay Act claims, which, of course, arise under and rely on normally in court under the Fair Labor Standards Act opt-in process, the process that Sterling argues should apply here. We argued that because of the AAA Rule 4, in fact, the opt-out process of that rule should apply. Some courts have adopted that position. The arbitrator concluded, however, that there was nothing in the agreement that suggested the party's intention to supersede the opt-in process that Congress created that governs Equal Pay Act claims, even in arbitration. I submit the same reasoning applies here. There's nothing in the agreement that reflects an intention by the parties to separately require, for every dispute that arises, a new opt-in process. This is the process that applies, was provided by Rule 4, and the supplementary rules expressly say they apply to the employment rules that are incorporated specifically in the AAA, in the Resolve program. And as I said before, Title VII, in any event, people are generally on notice that the Rule 23 process would apply. So they have, by virtue of entering into an agreement, which the arbitrator interpreted as reflecting an intention by each of them, that they intended to pursue, to submit their claims to arbitration, to binding arbitration, they have agreed to participate in this class. And as a result, if there were a ruling adverse to the claimants and in favor of Sterling, they would be foreclosed from litigating separately their disparate impact claims. And let me... Because Sterling would hold up the agreement and say, you had your time, you're foreclosed. And let me make one other point about the disparate impact claim here specifically, and that is, by virtue of the nature of this disparate impact claim, which here has to do with questions like whether Sterling relied on the proper factors in setting starting pay rates and whether they had an adverse effect on women, the ruling that the arbitrator issues would have the preclusive effect anyway because the same issue would be presented if these women pursued claims individually. The same issue would be presented. And indeed, we've spent millions of dollars in expert costs here that we have been able to do because we're doing it on behalf of the group. If these women had to separately litigate this, they would be... It would be unaffordable. But we have a process in place. The agreement doesn't modify the process. The agreement reflects, as the arbitrator said, an intention by these women to participate, to agree to submit their Title VII claims to binding arbitration in a class proceeding. If the arbitrator, by the way, I left a step out, it's very important, if the arbitrator finds that the requirements of a representative action are met, that the individual named representatives can satisfy the requirements that are needed, that their claims are typical, that they're challenging a common practice, all the requirements that are patterned just like titles, like Rule 23. So the due process provisions of Rule 23 are incorporated by reference here in Rule 4 of the supplementary rules of the AAA. So I submit that the agreement provides for this. There is a separate process that we recognize that governs equal PAC claims. This is not that process. Nothing in the agreement modified either the opt-in process for the equal PAC claims, nothing in the agreement modified the process normally applicable to the Title VII claims, which is not a separate opt-in process, and would, therefore, bind the members of the class if there were a ruling adverse to them. And I should add... I have a reference in the record, and I'm just asking for help in understanding the record, to the arbitrator possibly considering a streamlined procedure for damages in the future. Could you tell me what that was referring to? Sure. Footnote 425. We know it well. We argued that there were methods available to adjudicate the back pay claims, which is all that's at issue here, through some kind of common adjudicatory process. The arbitrator was troubled by that, did not certify the back pay claims under the Disciplinary Act claim, reserved some kind of the right to return to it and some kind of process she has yet to articulate. I will just add that we know, as a result of, for instance, recent authority from the Supreme Court in the Tyson Foods and Bufakio decision, among other things, and other types of procedures that this circuit has approved, that there may very well be methods available for the arbitrator to revisit the adjudication of the monetary relief claims. But be assured, if there is a method adopted by the arbitrator that provides for a collective adjudication of the back pay claims, rather than doing it individually, we will revisit the question of the right to opt out. Because at that point, as the Supreme Court in the Walmart decision made clear, their differences may be sufficient that they ought to have a right to opt out in a way that, in the pursuit of declaratory injunctive relief, they do not. I am almost out of time, if I may. I just want to briefly address a question which I think is clear, but just to make the point, and that is the question about who gets to decide. I know Sterling insists that it has reserved its right to argue that the court, not the arbitrator, should decide. I think the arbitration agreement itself is very clear that the arbitrator normally decides. It does vest the court with discretion to determine whether it wishes to decide that. Judge Rakoff was presented with that question. He elected not to decide these issues and referred it to arbitration. And that decision, the decision by Judge Rakoff, in which all these things were considered, arose before the appeal that was taken before this court the first time around. That could have been raised with this court before, and wasn't. So it's now, we submit an issue that it is too late to raise. I think it was the right decision to begin with. And as I said, it was a matter of discretion. So even if this court were to review it, it would be for an abuse of discretion by Judge Rakoff. And he gave the reasoned decision. We think it was right. Unless the court has other questions, thank you. Thank you, Mr. Sellers. Mr. Mattman, you've reserved two minutes. Thank you, Your Honor. Mr. Sellers referred to a finding that all of the class members agreed to participate in the case. I believe the record shows only 254 opted in and participated and agreed, not all 44,000. There was no such finding in the four corners of the class certification award. And hence, we go back to the touchstones of the Federal Arbitration Act, that an arbitrator only has jurisdiction over persons who have submitted to arbitrate a specific dispute, and who have submitted that dispute to be resolved by the arbiter. So on this record, we submit that this- The argument on the other side, and please correct me if I'm misunderstanding this, that by signing off on the agreement, which contains, as we now know, several courts having essentially suggested that it's up to the arbitrator to decide what it contains, that de facto, they have signed on to the agreement. Apparently, the argument is that's somehow an implied blank check. I signed it in Des Moines, Iowa, in 1998, and that's my- Well, if we look at some of the- In 2008. If we look at some of the Supreme Court cases on arbitrability of claims and involving credit cards, what's wrong with a blank check? Because that's not a specific dispute and not this proceeding that that person agreed to participate in, and I believe- But it's up to the arbitrator to decide that, right? I mean, Sterling wanted it that way, or set up the agreement, and that's what Sterling got. If that's what she wanted to say, she didn't find that, she didn't say it, she didn't articulate it. She simply conflated the issue of, you signed the resolve agreement, therefore, you've consented to be in this case. We believe that squarely presents this court with the issue that Justice Alito put forth in Oxford Health. So the issue requires this court to examine these questions, and Sterling submits that, for the reasons set forth in its briefing, the arbitrator exceeded her authority, and the class certification award cannot stand as to those absent class members. Thank you very much. Thank you, Your Honor. Thank you both. We'll reserve decision.